IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------x
KAO KABUSHIKI KAISHA t/a KAO
CORPORATION AND
KAO USA INC.

                Plaintiffs,                Civil Action No.: 17-cv-4584

     v.

SAMI KHALES

                Defendant.
-------------------------------------------------------x

## COMPLAINT

Plaintiffs Kao Kabushiki Kaisha t/a Kao Corporation ("Kao Corporation") and Kao USA Inc. ("Kao USA" and, collectively, "Kao" or "Plaintiffs"), by and through their undersigned counsel, for their complaint against Defendant Sami Khales ("Defendant"), hereby allege and state the following:

## NATURE AND BASIS OF ACTION

1.      This is an action to stop Defendant's unlawful distribution and sale of counterfeit products bearing Kao's famous JERGENS® trademarks.  Defendant's willful actions constitute counterfeiting, trademark infringement, dilution and unfair competition in violation of Sections 32 and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a), and Sections  340, 350 and 360-1 of the New York General Business Law, and New York common law.

2.      Plaintiffs seek immediate injunctive relief; actual damages; statutory damages; punitive damages; seizure and destruction of counterfeit goods and recovery of Plaintiffs' costs

and reasonable attorneys' fees incurred in connection with this action due to Defendant's willful, unlawful acts.

## THE PARTIES

3.      Plaintiff Kao USA is a corporation organized under the laws of the State of Delaware, and is located and doing business at 2535 Spring Grove Ave, Cincinnati, Ohio, 45214.

4.      Plaintiff Kao Corporation is a corporation organized under the laws of Japan, and is located and doing business at Nihonbashi Kayabacho 1-chome, Chuo-ku Tokyo 103-8210 Japan.

5.      Upon information and belief, Defendant Sami Khales is an individual residing at 106A E. Central Boulevard, Palisades Park, New Jersey, 07650.

## JURISDICTION

6.      This Court has subject matter jurisdiction over Plaintiffs' Lanham Act claims pursuant to Section 39 of the Lanham Act, 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331 and 1338. The Court also has supplemental jurisdiction over Plaintiffs' state and common law claims pursuant to 28 U.S.C. § 1367.

7.      Venue is proper in this district pursuant to 28 U.S.C. § 1391, since a substantial part of the events giving rise to the claims against Defendant occurred in this District.

8.      This Court has personal jurisdiction over Defendant because, upon information and belief, Defendant conducts business in this District and throughout the State of New York. Additionally, a substantial part of the acts giving rise to Plaintiffs' causes of action have occurred in the State of New York and, upon information and belief, Defendant has committed further

tortious acts within this State that serve as the basis for Plaintiffs' causes of action asserted herein.

## PLAINTIFFS' PRODUCTS AND TRADEMARKS

9.     Plaintiff Kao Corporation is a chemical and cosmetics company headquartered in Tokyo, Japan.

10.    Kao is an international leader in the beauty and personal care industry, with numerous distinctive brands and a history of innovation that spans more than a century.

11.    Plaintiff Kao Corporation owns several famous brands of cosmetics sold throughout the United States and worldwide, including Jergens®, Biore®, Curel®, and Molton Brown®.

12.    Plaintiff Kao USA is a wholly owned subsidiary of Kao Corporation, which markets and distributes the aforementioned brands of cosmetics products, including JERGENS® products, in the United States.

13.    Plaintiffs and their predecessors-in-interest have continuously used the mark JERGENS ("JERGENS®" or the "JERGENS® Mark") in the United States in connection with skin care products since at least as early as 1893, including body lotion since at least as early as 1901.

14.    The JERGENS® Mark is famous in the United States and throughout the world and has been named one of the most trusted brands in America.

15.    Plaintiff Kao Corporation is also the owner of common law rights and federal trademark registrations for a number of trademarks which are used in conjunction with its products bearing the JERGENS® Mark.

3

16.     Plaintiffs began using the mark ULTRA HEALING® (the "ULTRA HEALING Mark") as the name of a moisturizer product sold under the JERGENS® Mark in 1994, and have used the mark continuously since that date.

17.     Plaintiffs have also used the mark HYDRALUCENCE® (the "HYDRALUCENCE Mark") as a trademark to identify the proprietary blend of moisturizers used in JERGENS® moisturizers and skin lotions since at least as early as 2014.

18.     Since at least as early as 2012, Plaintiffs has also used the following stylized "J" logo (the "J Logo Mark") on JERGENS® products, including the ULTRA HEALING® skin lotion:



19.     The ULTRA HEALING Mark, the HYDRALUCENCE Mark and the J Logo Mark are hereinafter collectively referred to as the "Associated Marks."

20.     In addition to its common law rights, Plaintiff Kao Corporation also owns several federal trademark registrations for these marks, as set forth below (collectively, "Plaintiffs' Marks"):

| Reg. No. | Mark | Goods | Reg. Date | Cert. of Reg. |
| --- | --- | --- | --- | --- |
| 1,100,478 | JERGENS | Skin lotion | August 29, 1978 | Exhibit 1 |
| 2,435,345 | JERGENS | Facial cleansers, facial moisturizers, body cleansers, liquid skin soap, toilet soap | March 13, 2001 | Exhibit 2 |
| 3,317,053 | ULTRA HEALING | Non-medicated skin care preparations | October 23, 2007 | Exhibit 3 |

| 4,585,828 | HYDRALUCENCE | Non-medicated skin care preparations | August 12, 2014 | Exhibit 4 |
| 4,354,936 | | Non-medicated skin care preparations | June 18, 2013 | Exhibit 5 |

21.     The federal registrations for Plaintiff Kao Corporation's Marks are valid and subsisting, and in full force and effect.  Copies of the Certificates of Registration for the registrations are attached as **Exhibits 1-5** and by this reference are incorporated herein.

22.     Pursuant to Sections 15, 22 and 33 of the Lanham Act, 15 U.S.C. §§ 1065, 1072 and 1115, the registrations for the JERGENS Mark (Reg. Nos. 1,100,478 and 2,435,345) and the ULTRA HEALING Mark (Reg. No. 3,317,053) are incontestable and constitute conclusive evidence of the validity and subsistence of the marks and Plaintiff Kao Corporation's ownership of and exclusive right to use the marks in commerce.

23.      Pursuant to Sections 7, 22 and 33 of the Lanham Act, 15 U.S.C. §§ 1057, 1072 and 1115, the registrations for the HYDRALUCENCE Mark (Reg. No. 4,585,828) and the J Logo Mark (Reg. No. 4,354,936) constitute *prima facie* evidence of the validity and subsistence of the registered marks and Plaintiff Kao Corporation's ownership of and exclusive right to use the marks in commerce.

24.     Among the most well-known and highly regarded JERGENS® products are Plaintiffs' line of body lotions and moisturizers, including the JERGENS® ULTRA HEALING® moisturizer and the JERGENS® Original Scent moisturizer.

25.     Plaintiffs' Marks appear on the packaging of genuine JERGENS® body lotions and moisturizers.

26.     Plaintiffs have invested extensively in the development and quality of the JERGENS® products, which are specially formulated to smooth away dryness and bring out glowing, healthier-looking skin.

27.     Plaintiffs have also engaged in extensive advertising and promotion of Plaintiffs' Marks and have expended millions of dollars advertising and marketing JERGENS® products to the consuming public.

28.     As a result, Plaintiffs' JERGENS® products are among the most popular moisturizers and body lotions in the United States.

29.     Plaintiffs' Marks are symbols of Plaintiffs' high quality products and embody the substantial and valuable goodwill associated therewith.

30.     As a result of Plaintiffs' significant investment and promotional efforts, Plaintiffs enjoy a strong reputation and a high level of goodwill among relevant consumers throughout New York and the United States in connection with the products sold under Plaintiffs' Marks.

31.     As a result of Plaintiffs' marketing efforts and the long and substantially exclusive use of Plaintiffs' Marks, the trade and the consuming public identify the JERGENS® products and the associated trademarks with Plaintiffs in the state of New York and throughout the United States.

32.     The consuming public has come to immediately recognize and associate Plaintiffs' Marks with the high quality, safe and reliable products offered thereunder.

33.     As a result of Plaintiffs' significant investment and promotional efforts, and prior to the acts of the Defendant alleged herein, the JERGENS® Mark has become famous in the minds of consumers as designations of source for Plaintiffs' products.

**DEFENDANT'S UNLAWFUL CONDUCT**

34.     Upon information and belief, Defendant is exploiting the reputation and success of Plaintiffs' Marks by manufacturing, marketing, distributing, offering to sell and selling non-genuine moisturizer products which bear counterfeit reproductions of Plaintiffs' Marks: JERGENS®, HYDRALUCENCE®, ULTRA HEALING®, the stylized "J" logo, and other registered trademarks (the "Counterfeit Products").

35.     A photographic depiction of one of the Defendant's Counterfeit Products is depicted alongside an example of Plaintiffs' genuine JERGENS® moisturizer below:



**Plaintiffs' Genuine JERGENS® Product          Defendant's Counterfeit Product**

36.     The Counterfeit Products are designed and labeled so as to appear substantially identical to Plaintiffs' JERGENS® products.

37.     However, there are significant differences between Plaintiffs' genuine JERGENS® products and the Counterfeit Products, putting both Plaintiffs' reputation and consumer health at risk.

7

38.     Consumer confusion has already resulted from Defendant's unauthorized sales of the Counterfeit Products, including in the state of New York.

39.     Between July and December, 2016, Plaintiffs received complaints from several consumers in New York and Connecticut who had purchased the Counterfeit Products, believing them to be genuine JERGENS® products, from sources that were ultimately traced back to Defendant.

40.     The consumers reported dissatisfaction with the quality of the Counterfeit Products, stating that the moisturizers they had purchased were thin and watery.

41.     At Plaintiffs' request, the consumers provided the products they had purchased to Plaintiffs.

42.     Plaintiff Kao USA inspected the products returned by customers and determined they were Counterfeit Products.

43.     Plaintiff Kao USA identified numerous differences between the packaging of the returned Coutnerfeit Products and the packaging of genuine JERGENS® products.

44.     The differences between the packaging of the Counterfeit Products and Plaintiffs' genuine JERGENS® products include the dimensions of the bottle, neck, and cap; different coloring on the packaging; different positioning of the trademarks on the packaging; differences in the text and images on the label; and different resin identification codes.

45.     The Counterfeit Products contained a thin, watery liquid with a pink color and flowery scent, which was immediately distinguishable from authentic JERGENS® moisturizer.

46.     Further testing by Plaintiff Kao USA confirmed that the moisturizer in the Counterfeit Products was significantly different in composition from authentic JERGENS® moisturizer.

8

47.     The Counterfeit Products did not meet Plaintiff Kao USA's standards for pH, viscosity, odor, or color.

48.     Infrared spectroscopy ("IR") scans of the Counterfeit Products showed indications of reduced and missing raw materials as compared to genuine JERGENS® product.

49.     A microbial recovery count analysis performed on the Counterfeit Products revealed possible microbial contamination and showed significant yeast and mold growth after 48 hours, increasing public health risk in conjunction with the product.

50.     Upon learning of the sale of the Counterfeit Products in New York, Plaintiffs began an investigation to determine the source of the Counterfeit Products.  Plaintiffs traced the Counterfeit Products to Coast to Coast LLC ("Coast to Coast"), a limited liability corporation organized under the laws of the State of New York located and doing business at 1058 Pacific St., Brooklyn, New York 11238.

51.     Upon information and belief, Coast to Coast purchased the Counterfeit Products from Train Wreck LLC ("Train Wreck"), a New Jersey limited liability company located and doing business at 179 Blue Heron Drive, Secaucus, New Jersey, 07094.

52.     On June 15, 2017, Plaintiffs sued Train Wreck and its President Samer Abuali in the U.S. District Court for the Eastern District of New York for counterfeiting, trademark infringement, dilution, and unfair competition based upon their unlawful sale and distribution of Counterfeit Products (Case No. 1:17-cv-03625-DLI-PK).

53.     Shortly after the filing of the complaint against Train Wreck and Mr. Abuali, Mr. Abuali contacted Plaintiffs' counsel and identified Defendant as the source of the Counterfeit Products sold by Train Wreck.

54.     Mr. Abuali provided Plaintiffs' counsel with a photograph of a check dated May 31, 2016 from Train Wreck to Defendant in the amount of $10,000 (**Exhibit 6**).  Mr. Abuali stated that this was payment to Defendant for the Counterfeit Products.  Mr. Abuali further stated that Defendant delivered the Counterfeit Products to Train Wreck in late May of 2016.

55.     Upon information and belief, Defendant knowingly sold the Counterfeit Products to Train Wreck and caused the Counterfeit Products to be delivered to Train Wreck.

56.     Upon information and belief, Defendant knew that the Counterfeit Products were counterfeits and not genuine JERGENS ® Products at the time he sold the Counterfeit Products to Train Wreck.

57.     Upon information and belief, Defendant knew that Train Wreck intended to sell the Counterfeit Products to Coast to Coast, from which they would be distributed to various retailers, where they would be sold to consumers.

58.      Defendant is not an authorized distributor of JERGENS® products and his sale of the products to Train Wreck occurred outside of Plaintiffs' controlled and sanctioned distribution channels.

59.     Upon information and belief, Defendant has distributed and sold the Counterfeit Products to other entities in New York and the surrounding states for resale to the general public.

60.     Upon information and belief, Defendant is profiting from the manufacture, distribution and sale of the Counterfeit Products.

61.     Defendant is in no way affiliated with Plaintiffs or any related entities.

62.     Upon information and belief, Defendant is willfully and knowingly selling and distributing the Counterfeit Products.

63.     Upon information and belief, Defendant deliberately intended and continues to intend to pass off the Counterfeit Products as those of Plaintiffs by reproducing, copying, counterfeiting and imitating Plaintiffs' Marks and applying them to the counterfeit product.

64.     Upon information and belief, Defendant, deliberately and without authorization, is using Plaintiffs' Marks in the same stylized fashion on product packaging that mimics genuine JERGENS® packaging in connection with inferior and potentially harmful goods.

65.     Upon information and belief, Defendant has and is continuing to advertise, promote, distribute, offer for sale, and/or sell the Counterfeit Products in interstate commerce and in this judicial district.

66.     Plaintiffs' genuine JERGENS® products and the Counterfeit Products are marketed and sold through the same or similar channels of trade to the same or similar retailers, wholesalers, and end consumers for the exact same use.

67.     Upon information and belief, Defendant has misled and will continue to mislead consumers into believing that Defendant's unauthorized Counterfeit Products are Plaintiffs' genuine JERGENS® products.

68.     Upon information and belief, Defendant's efforts have harmed and will continue to harm Plaintiffs' famous and distinctive trademarks and their extensive good will and reputation.

69.     Plaintiffs have suffered and will continue to suffer an immediate and further loss in sales as a direct result of continued sales and distribution of the Counterfeit Products.

70.     As a result of the inferior and unknown quality of the Counterfeit Products, consumers' skin will be exposed to a moisturizer that is not equivalent in quality to the JERGENS® product and which is potentially harmful, causing a risk to consumer health.

71.     In addition to the threat to public health, adverse effects or inferior quality of the Counterfeit Products have been and will continue to be attributed to Plaintiffs, because consumers believe that they are purchasing genuine product, thus resulting in the erosion of Plaintiffs' significant reputation and goodwill in Plaintiffs' Marks.

<u>**COUNT I**</u>

**COUNTERFEITING IN VIOLATION OF**
**SECTION 32 OF THE LANHAM ACT, (15 U.S.C. § 1114)**

Plaintiffs repeat and re-allege each and every allegation contained in Paragraphs 1 through 71 of this Complaint, and incorporate them herein by reference.

72.     The Counterfeit Products bear spurious designations that are identical to and indistinguishable from Plaintiffs' Marks: JERGENS®, HYDRALUCENCE®, ULTRA HEALING® and the stylized "J" logo.

73.     Defendant's unauthorized use of the counterfeit marks in commerce in connection with the sale, offering for sale, distribution, and/or advertisement of the Counterfeit Products is likely to cause confusion, cause mistake, and/or deceive prospective or actual customers and other members of the public.

74.     Upon information and belief, Defendant's purpose in using the counterfeit marks was and is to deceive, mislead and confuse customers, so as to trade on the substantial reputation and goodwill enjoyed by Plaintiffs in connection with Plaintiffs' Marks.

75.     Defendant's adoption and unauthorized use of the counterfeit marks violates Plaintiffs' exclusive rights in its federally registered marks in violation of Section 32, 15 U.S.C. § 1114, of the Lanham Act.

76.     Defendant's acts of counterfeiting as alleged herein have caused, are causing, and will continue to cause irreparable and inherently unquantifiable injury and harm to Plaintiffs' business, reputation, and goodwill, unless Defendant's unlawful conduct is enjoined by this Court.

77.      Pursuant to 15 U.S.C. §§ 1116 and 1117, Plaintiffs are entitled to preliminary and permanent injunctive relief against Defendant's continuing acts, and damages and statutory damages for Defendant's Lanham Act violations.

78.     Defendant's acts are willful, wanton and calculated to deceive, and are undertaken in bad faith, making this an exceptional case entitling Plaintiffs to recover additional damages and their reasonable attorney fees pursuant to 15 U.S.C. § 1117.

## COUNT II

### TRADEMARK INFRINGEMENT IN VIOLATION OF
### SECTION 32 OF THE LANHAM ACT, (15 U.S.C. § 1114)

Plaintiffs repeat and re-allege each and every allegation contained in Paragraphs 1 through 78 of this Complaint, and incorporate them herein by reference.

79.     The Counterfeit Products bear infringing marks which are colorable imitations of Plaintiff Kao Corporation's federally registered marks: JERGENS®, HYDRALUCENCE®, ULTRA HEALING® and the stylized "J" logo.

80.     Defendant's unauthorized use of the infringing marks in commerce in connection with the sale, offering for sale, distribution, and/or advertisement of the Counterfeit Products is likely to cause confusion, cause mistake, and/or deceive prospective or actual customers and other members of the public.

81.     Upon information and belief, Defendant's purpose in using the infringing marks was and is to deceive, mislead and confuse customers, so as to trade on the substantial reputation and goodwill enjoyed by Plaintiffs in connection with Plaintiffs' Marks.

82.     Defendant's adoption and unauthorized use of the infringing marks infringes Plaintiffs' exclusive rights in their federally registered marks in violation of Section 32, 15 U.S.C. § 1114, of the Lanham Act.

83.     Defendant's acts of infringement as alleged herein have caused, are causing, and will continue to cause irreparable and inherently unquantifiable injury and harm to Plaintiffs' business, reputation, and goodwill, unless Defendant's unlawful conduct is enjoined by this Court.

84.      Pursuant to 15 U.S.C. §§ 1116 and 1117, Plaintiffs are entitled to preliminary and permanent injunctive relief against Defendant's continuing acts and damages for Defendant's Lanham Act violations.

85.     Defendant's acts are willful, wanton and calculated to deceive, and are undertaken in bad faith, making this an exceptional case entitling Plaintiffs to recover additional damages and their reasonable attorney fees pursuant to 15 U.S.C. § 1117.

## COUNT III

### UNFAIR COMPETITION IN VIOLATION OF
### SECTION 43(a) OF THE LANHAM ACT, (15 U.S.C. § 1125(a))

Plaintiffs repeat and re-allege each and every allegation contained in Paragraphs 1 through 85 of this Complaint, and incorporate them herein by reference.

86.     Plaintiffs have used the JERGENS Mark in connection with consumer products since at least as early as 1893, including body lotion since at least as early as 1901.

14

87.     Plaintiffs have been making continuous and substantially exclusive use of Plaintiffs' Marks in connection with moisturizer and body lotions for many years and long before the infringing acts at issue in this case

88.     Plaintiffs' Marks are highly distinctive indicators of source that are uniquely associated with Plaintiffs.

89.     Plaintiffs have spent millions of dollars promoting and advertising the JERGENS® products and Plaintiffs' Marks for many years on a nationwide basis and in this District.

90.     As a result, Plaintiffs' Marks have become highly distinctive as indicators of source that are uniquely associated with Plaintiffs and in which Plaintiffs have developed significant goodwill.

91.     The JERGENS® brand name is famous in the United States and throughout the world and has been named one of the most trusted brands in America.

92.     Long after Plaintiffs' Marks were adopted by Plaintiffs and became distinctive of Plaintiffs' goods, Defendant adopted and began using the infringing marks for its Counterfeit Products.

93.     Defendant's Counterfeit Products compete directly with and are sold through the same trade channels as Plaintiffs' genuine JERGENS® products.

94.     The infringing marks featured on Defendant's Counterfeit Products are identical to or colorable imitations of Plaintiffs' Marks.

95.     Defendant's use and promotion of the infringing marks on the Counterfeit Products in commerce is likely to cause confusion, or to cause mistake, or to deceive as to the source, origin, sponsorship or approval of Defendant, his products, and/or his commercial

activities by or with Plaintiffs and therefore constitutes unfair competition in violation of Section 43(a), 15 U.S.C. § 1125(a), of the Lanham Act.

96.     The Counterfeit Products also bear false designations of origin, false or misleading descriptions of fact or false or misleading representations of fact which were or are likely to cause confusion, or to cause mistake, or to deceive as to the source, origin, sponsorship or approval of Defendant, his products, and/or his commercial activities by or with Plaintiffs and therefore constitutes unfair competition in violation of Section 43(a), 15 U.S.C. § 1125(a), of the Lanham Act.

97.     Defendant's acts of infringement and unfair competition as alleged herein have caused, are causing, and will continue to cause irreparable and inherently unquantifiable injury and harm to Plaintiffs' business, reputation, and goodwill, unless Defendant's unlawful conduct is enjoined by this Court.

98.     Plaintiffs are entitled to recover all damages sustained by Defendant's actions, all profits realized by Defendant through his infringing and spurious use of Plaintiffs' Marks on the Counterfeit Products, and the costs of this action.

99.     Pursuant to 15 U.S.C. §§ 1116 and 1117, Plaintiffs are entitled to preliminary and permanent injunctive relief against Defendant's continuing acts and damages for Defendant's Lanham Act violations.

100.     Defendant's acts are willful, wanton and calculated to deceive, and are undertaken in bad faith, making this an exceptional case entitling Plaintiffs to recover additional damages and their reasonable attorney fees pursuant to 15 U.S.C. § 1117.

## COUNT IV

### DILUTION IN VIOLATION OF SECTION 43(c)
### OF THE LANHAM ACT, (15 U.S.C. § 1125(c))

Plaintiffs repeat and re-allege each and every allegation contained in in Paragraphs 1 through 100 of this Complaint, and incorporate them herein by reference.

101.   The JERGENS® Mark is famous among the general consuming public of the United States and throughout the world.

102.   The Counterfeit Products sold by Defendant bear a counterfeit mark which is identical to Plaintiff Kao Corporation's federally registered JERGENS® Mark.

103.   Defendant began using the counterfeit "Jergens" mark long after Plaintiffs' JERGENS Mark became famous.

104.   Defendant's adoption and unauthorized use of the counterfeit "Jergens" mark dilutes the quality of Plaintiffs' famous JERGENS Mark® by diminishing the capacity of the mark to identify and distinguish Plaintiffs' goods in violation of Section 43(c), 15 U.S.C. § 1125(c), of the Lanham Act.

105.   Defendant's adoption and unauthorized use of the counterfeit JERGENS Mark in connection with inferior, low-quality, and potentially harmful products is likely to tarnish the distinctiveness, fame, and goodwill associated with Plaintiffs' famous JERGENS® Mark in violation of Section 43(c), 15 U.S.C. § 1125(c), of the Lanham Act.

106.   Defendant's unauthorized use of the counterfeit "Jergens" Mark in commerce in connection with the sale, offering for sale, distribution, and/or advertisement of its the Counterfeit Products is likely to cause dilution by blurring and tarnishment of Plaintiff Kao Corporation's famous and federally-registered JERGENS® Mark.

107.    Defendant's acts of dilution as alleged herein have caused, are causing, and will continue to cause irreparable and inherently unquantifiable injury and harm to Plaintiffs' business, reputation, and goodwill, unless Defendant's unlawful conduct is enjoined by this Court.

108.    Pursuant to 15 U.S.C. §§ 1116 and 1117, Plaintiffs are entitled to preliminary and permanent injunctive relief against Defendant's continuing acts and damages for Defendant's Lanham Act violations.

109.    Defendant's acts are willful, wanton and calculated to deceive, and are undertaken in bad faith, making this an exceptional case entitling Plaintiffs to recover additional damages and their reasonable attorney fees pursuant to 15 U.S.C. § 1117.

## COUNT V

### DILUTION IN VIOLATION OF SECTION 360-1
### OF THE NEW YORK GENERAL BUSINESS LAW

Plaintiffs repeat and re-allege each and every allegation contained in in Paragraphs 1 through 111 of this Complaint, and incorporate them herein by reference.

110.    New York General Business Law, Section 360-1, provides that:

> Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief in cases of infringement of a mark registered or not registered or in cases of unfair competition, notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.

111.    Plaintiffs have exclusive rights in and to Plaintiffs' Marks.

112.    Through long, prominent and continuous use of these marks in commerce, Plaintiffs' Marks have become and continue to be famous and distinctive in New York and throughout the United States.

18

113.    Long after Plaintiffs' Marks became famous and distinctive, Defendant began using unauthorized reproductions of Plaintiffs' Marks in connection with the Counterfeit Products.

114.    The unauthorized marks used on the Counterfeit Products sold by Defendant are identical or substantially similar to Plaintiffs' Marks.

115.    Defendant's unauthorized use of Plaintiffs' Marks dilutes or is likely to dilute the distinctive quality of those marks and lessen the capacity of such marks to identify Plaintiffs and distinguish its goods.

116.    Defendant's unauthorized use of Plaintiff's Marks in connection with the inferior Counterfeit Products is also likely to tarnish those trademarks and cause blurring in the minds of consumers between Plaintiffs and Defendant, lessening the value of Plaintiffs' Marks as indicators of source.

117.    By the acts described above, Defendant has diluted and is likely to dilute the distinctiveness of Plaintiffs' Marks and has caused a likelihood of harm to Plaintiffs' business reputation in violation of Section 360-1 of the New York General Business Law.

118.    Defendant's acts alleged herein have caused, are causing, and will continue to cause irreparable injury and harm to Plaintiffs' business, reputation, and goodwill, unless Defendant's unlawful conduct is enjoined by this Court.  Plaintiffs have no adequate remedy at law and therefore are damaged in an amount not yet determined.

<u>**COUNT VI**</u>

**DECEPTIVE ACTS AND PRACTICES IN VIOLATION OF**
**SECTIONS 349 AND 350 OF THE NEW YORK GENERAL BUSINESS LAW**

Plaintiffs repeat and re-allege each and every allegation contained in in paragraphs 1 through 121 of this Complaint, and incorporate them herein by reference.

119.    New York General Business Law, Section 349, states in relevant part that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."

120.    New York General Business Law, Section 350, further states that "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

121.    Through the manufacture, importation, advertisement, distribution, offer to sell, and sale of the Counterfeit Products, Defendant has engaged in consumer-oriented conduct that has affected the public interest of New York and has resulted in injury to consumers in New York.

122.    Defendant's deceptive acts and practices, as described herein, are materially misleading.  Such acts or practices have deceived or have a tendency to deceive a material segment of the public to whom Defendant has directed their unlawful activities, and Plaintiffs have been injured thereby.

123.    By the acts described above and throughout this Complaint, Defendant has willfully engaged in deceptive acts or practices in the conduct of business or furnishing of goods and services in violation of Sections 349 and 350 of the New York General Business Law.

124.    Defendant's acts alleged herein have caused, are causing, and will continue to cause irreparable injury and harm to Plaintiffs' business, reputation, and goodwill, unless Defendant's unlawful conduct is enjoined by this Court.  Plaintiffs have no adequate remedy at law and therefore are damaged in an amount not yet determined.

<u>**COUNT VII**</u>

**TRADEMARK INFRINGEMENT IN VIOLATION OF
NEW YORK STATE COMMON LAW**

Plaintiffs repeat and re-allege each and every allegation contained in Paragraphs 1 through 124 of this Complaint, and incorporate them herein by reference.

125.    As described above, Plaintiffs own all right, title and interest in and to Plaintiffs' Marks and all common law rights associated therewith.

126.    Defendant's Counterfeit Products bears spurious reproductions and/or colorable imitations of Plaintiffs' Marks.

127.    Defendant's use of Plaintiffs' trademarks is unauthorized and is likely to cause consumer confusion.

128.    By the acts described above, Defendant has engaged in trademark infringement in violation of the common law of the State of New York.

129.    Defendant's acts alleged herein have caused, are causing, and will continue to cause irreparable injury and harm to Plaintiffs' business, reputation, and goodwill, unless Defendant's unlawful conduct is enjoined by this Court.  Plaintiffs have no adequate remedy at law and therefore are damaged in an amount not yet determined.

<u>**COUNT VII**</u>

**UNFAIR COMPETITION IN VIOLATION OF
NEW YORK STATE COMMON LAW**

Plaintiffs repeat and re-allege each and every allegation contained in Paragraphs 1 through 129 of this Complaint, and incorporate them herein by reference.

130.    Defendant has passed off the Counterfeit Products as those of Plaintiffs, thereby improperly trading upon Plaintiffs' goodwill and the valuable rights associated with Plaintiffs' Marks.

131.    Defendant committed these acts willfully, and with a conscious disregard of Plaintiffs' rights, and Plaintiffs are therefore entitled to exemplary and punitive damages pursuant to the common law of the State of New York in an amount sufficient to punish, deter, and make an example of Defendant.

132.    Defendant's acts alleged herein have caused, are causing, and will continue to cause irreparable injury and harm to Plaintiffs' business, reputation, and goodwill, unless Defendant's unlawful conduct is enjoined by this Court.  Plaintiffs have no adequate remedy at law and therefore are damaged in an amount not yet determined.

## JURY DEMAND

Plaintiffs demand a trial by jury of all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that the Court enter judgment in their favor and grant the following relief:

A.      A finding that Defendant has violated sections 32 and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a), and Sections  340, 350 and 360-1 of the New York General Business Law, and New York common law;

B.      A preliminary and permanent injunction enjoining Defendant and his agents, servants, employees, and attorneys and all others acting in privity or in concert with them:

      a.       from labeling, manufacturing, distributing, importing, listing, marketing, offering for sale, or selling any goods bearing any of Plaintiffs' Marks, or any marks confusingly similar thereto;

      b.      from infringing any of Plaintiffs' Marks;

      c.      from affixing, applying, annexing or using in connection with the sale of any goods, any false description or representation, including words or other symbols, tending to falsely describe the products or represent such goods as being JERGENS® products, and from offering such goods in commerce;

      d.      from falsely representing himself as being connected with Plaintiffs or engaging in any act which is likely to cause the trade, retailers and/or members of the purchasing public to believe that Defendant is associated with Plaintiffs;

23

e.     from otherwise unfairly competing with Plaintiffs in the manufacture, sale, offering for sale, distribution, or advertisement of JERGENS® products;

f.     from diluting any of Plaintiffs' Marks;

g.     from destroying any records documenting the manufacture, sale, offer for sale, distribution, advertisement or receipt of any product purporting to be a JERGENS® product; and

h.     from assisting, aiding or abetting any other person or business entity in engaging in or performing any of the foregoing activities.

C.     Seizure and destruction of all counterfeit goods bearing any of Plaintiffs' Marks;

D.     Ordering that, within fifteen days after the entry and service of a preliminary or permanent injunction, Defendant serve and file a written report under oath setting forth in detail the manner and form in which he has complied with the injunction; and

E.     Awarding Plaintiffs statutory damages of $2,000,000 per counterfeit mark per type of goods in accordance with Section 35 of the Lanham Act, 15 U.S.C. § 1117, or alternatively, ordering Defendant to account to and pay to Plaintiffs all profits realized by his wrongful acts and also awarding Plaintiffs its actual damages, and also directing that such profits or actual damages be trebled, in accordance with Section 35 of the Lanham Act, 15 U.S.C. § 1117;

F.     Awarding Plaintiffs actual and punitive damages to which it is entitled under applicable federal and state laws in an amount to be proven at trial;

G.     An award of pre-judgment and post-judgment interest;

H.     Awarding Plaintiffs their reasonable attorney fees and costs in prosecuting this action to the full extent provided by Section 35 of the Lanham Act, 15 U.S.C. § 1117, and New York law; and

I.      Awarding Plaintiffs such other relief as the interests of justice may require.


Dated:  August 4, 2017

                              Respectfully submitted,

                              KAO KABUSHIKI KAISHA a/t/a KAO
                              CORPORATION AND KAO USA INC.

                              By: /s/ Jacqueline Weyand
                              Jacqueline Weyand
                              BUCHANAN INGERSOLL & ROONEY PC
                              1290 Avenue of the Americas, 30th Floor
                              New York, NY  10104-3001


                              Bassam N. Ibrahim
                              S. Lloyd Smith
                              Bryce J. Maynard
                              Laura K. Pitts
                              BUCHANAN INGERSOLL & ROONEY PC
                              1737 King Street, Suite 500
                              Alexandria, Virginia 22314
                              Tel.:    (703) 836-6620
                              Fax:    (703) 836-2021
                              bassam.ibrahim@bipc.com
                              lloyd.smith@bipc.com


                              *Attorneys for Plaintiffs*